## William J. Wilson v. Austin H. Hart.

### Gen. No. 12,728.

1. CROSS-EXAMINATION—*when restriction of, erroneous.* In an action upon a contract of hiring, it is error to restrict the cross-examination with respect to the terms of such contract where it appears that the same was verbally made, and not made in writing as was held by the trial court.

2. ATTORNEY'S FEES—*when evidence as to usual and customary, incompetent.* Evidence as to the usual and customary fees charged by lawyers for a particular service given by lawyers who are unfamiliar with what such usual and customary charges were in the place where the services were rendered, is incompetent.

3. INSTRUCTIONS—*when erroneous as ignoring ground of defense.* It is error to instruct the jury that they may render a verdict upon a *quantum meruit* basis in a case where there is evidence tending to prove a specific agreement to pay a sum certain, no mention being made of such defense in the instruction.

Action of assumpsit. Appeal from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Reversed and remanded. Opinion filed November 7, 1906.

RICHOLSON & LEVY, for appellant; C. STUART BEATTIE, of counsel.

WINSTON, PAYNE & STRAWN, for appellee; EDWARD W. EVERETT, of counsel.

MR. JUSTICE BAKER delivered the opinion of the court.

Appellee brought in the Superior Court an action of *assumpsit* to recover for services rendered and expenses incurred by him under an alleged contract of employment of the plaintiff by the defendant, and recovered a judgment for $1,120.90, from which the defendant prosecutes this appeal.

The contention of the plaintiff was that August 23, 1904, he was employed by the defendant to foreclose two mortgages which the defendant held on property of the Sun Cloud Mining Company, situated near Kingman, Arizona, and also to purchase, *for the defendant*, certain mining claims theretofore held by said mining company under bond and lease, and that no agreement was made between said parties as to plaintiff's compensation for such services in either of said matters.

One of the contentions of the defendant, as to

plaintiff's claim for services rendered in the matter of the foreclosure of said mortgages was, that such services were rendered under an express agreement made between plaintiff and defendant that plaintiff should receive for foreclosing said mortgages the sum of $200, and that said sum was paid to him in advance by the defendant, and as to plaintiff's claim for services rendered in attempting to purchase said mining claims, one of defendant's contentions was, that such services were rendered to said mining company under a verbal agreement made between plaintiff and said company July 4, 1904, and that defendant did not employ the plaintiff to purchase said claim for him, or promise or agree to pay plaintiff for any services that he might render in relation to the purchase of said claims.

Plaintiff was admitted to the bar in New York in 1896 and claimed that in 1904 he was still a citizen of New York, but his residence was in Detroit, Michigan. He testified that he removed from New York to Charleston, South Carolina, in 1902, went from Charleston to Detroit, where his mother resided, in October, 1903, and from Detroit to his ranch in Arizona in November, 1903.

The Sun Cloud Mining Company was a corporation of which defendant was president, Garwood vice-president and Vary secretary and treasurer. Defendant, Garwood and Vary resided in Chicago. The company had a mine near Kingman, Arizona, of which R. P. Wheeler had charge. In May or June, 1904, Wheeler employed the plaintiff, who was then in Arizona, to defend a suit brought against the company in Arizona, in which the property of the company was attached. Plaintiff was never admitted to the bar in Arizona, but he testified that he filed some papers in the attachment suit.

June 30, 1904, plaintiff procured from Wheeler the following letter:

"KINGMAN, June 30, 1904.
DR. W. H. VARY,
     Sec'y & Treas. S. C. G. M. Co.,
         Chicago, Ill.

MY DEAR DOCTOR:—

This will introduce Mr. Hart, our attorney in the L. & W. matter, whom I have written you about and to whom we are deeply indebted for saving the property here.

Mr. Hart is on his way east, but stops over in Chicago for the purpose of seeing you and explaining the situation here.

Any courtesies shown him will be greatly appreciated by

            Yours very truly

                R. P. WHEELER."

Plaintiff presented this letter to Vary July 4, 1904, and on the same day plaintiff, Vary and Garwood called on defendant at his house. Plaintiff testified that on that occasion there was some conversation about said mining claims; that Wilson, Garwood and Vary told him that they were officers of said mining company, and that he knew that they represented said company. Plaintiff was then employed to go to Arizona to buy said mining claims. He testified that he was so employed by the defendant; that he was then employed to buy said claim, "for William J. Wilson."

Defendant testified, upon cross-examination, that July 4th plaintiff made an agreement with said mining company to go to Arizona and buy said mining claims for the company, and that he was to have, as his compensation, the difference between $10,000 and the amount he had to pay for said claims. Defendant offered in evidence his check, payable to plaintiff's order, for $400, dated July 8, 1904, indorsed by plaintiff, but the court sustained the plaintiff's objection to the check.

Plaintiff went to Arizona and, July 27th, wrote Wheeler that he had arranged with the owners of said

Wilson v. Hart.

claims to buy said claims for $6,000. but that as he was preparing to close the deal the owners received a telegram from Vary, stating that plaintiff "did not represent the Sun Cloud interests and was trying to buy the mill and move it away;" that this ended any further dealings and he would leave for Chicago at once. He reached Chicago July 31st and presented to the Sun Cloud Mining Company his bill for expenses to that date amounting to $429, and asked for an additional amount of $200. Defendant testified that he paid him the $200 and offered in evidence his check for $200 dated August 1, 1904, payable to plaintiff's order and indorsed by him, but the court sustained plaintiff's objection to the admission of the check.

Plaintiff was in Chicago August 23rd and met defendant. Plaintiff's testimony was that defendant then employed him to foreclose two mortgages that defendant held upon the property of said mining company, one for $5,000, the other for $6,000; that plaintiff told defendant that it might be necessary to file a petition in bankruptcy for, or against, said company; that defendant told plaintiff to buy for him certain mining claims that had been under bond and lease to said mining company, if he could get them for $3,000 or less, and that plaintiff should go to Arizona at once; that defendant then paid plaintiff $200 and that he told defendant he would apply $100 to expenses and $100 to fees; that he told defendant that he could not tell what his charges would be for going to Arizona to do that work, but they would be reasonable; that "I said I would like a memorandum authorizing me to go out there as his attorney and performing these services;" that he drew up a memorandum and defendant signed it. Said memorandum is as follows:

"CHICAGO, Aug. 23, 1904.

AUSTIN H. HART, ESQ.,
        Kingman, Ariz.
DEAR SIR:
    I hereby authorize you to act as my attorney in pro-

ceedings you are to take immediately for the foreclosure of the mortgages I hold against the property of the Sun Cloud Mining Co. and also to take the necessary steps for negotiating the purchase of the mining claims formerly held by the Sun Cloud Mining Co. under bond and lease.

Yours very respectfully,

WM. J. WILSON."

The contention of appellee is that the above memorandum is a "contract of hire" in writing, and that therefore no evidence of previous transactions or conversations in relation to the subject-matter thereof was admissible, and this was the view, apparently, entertained by the trial court, for upon the trial the court sustained plaintiff's objections to the offer of defendant to prove by Vary and by Garwood that plaintiff agreed with defendant to foreclose said mortgages for $200, and also his offer to prove by Vary, Garwood and himself that July 4th, at defendant's house, between plaintiff on one part and the Sun Cloud Mining Company represented by and acting through defendant, Garwood and Vary, its officers, on the other part, a verbal agreement was made that plaintiff should go to Arizona for said mining company and buy said claims for said company and have, as his compensation, the difference between $10,000 and the amount paid by him for said claims; that he returned July 31st and reported that he had been unable to buy said claims, and asked that he be allowed something in addition to his expenses for his work, and that defendant, as president of said company, then made him a present of $200. The court also refused to permit defendant to ask plaintiff, on cross-examination, whether upon his return to Chicago on July 31, 1904, he did not present a bill to the Sun Cloud Mining Company for his expenses, and ask defendant as president of said mining company for a donation of something for his services, although he did undertake the work on a contingent fee, and whether defendant did not say in re-

sponse to such application, "We do not feel that we owe you anything, but we will donate you $200 because of your failure to do anything."

Plaintiff testified in chief that he made a verbal agreement with defendant on August 23rd, stated its terms and testified that after such agreement was made: "I said I would like a memorandum authorizing me to go out there as his attorney," and that he then drew up the memorandum and defendant signed it. Defendant testified to the making of a verbal agreement with plaintiff August 23rd, in relation to the foreclosure of the mortgages, and that after the agreement was made plaintiff told him of the trouble he had had when in Arizona before, because some one had told the owners that he had no authority to act, and that plaintiff then prepared said memorandum and defendant signed it.

It is clear from the testimony that the agreement made between the parties on August 23rd was verbal; that the memorandum in question is not a memorandum of the agreement then made, but a mere memorandum of authority asked for and given after the verbal agreement had been made.

The defendant was entitled to great latitude in his cross-examination of the plaintiff as to that verbal agreement, and we think the court erred in limiting that cross-examination and in excluding the evidence offered by the defendant as to the verbal agreement between the parties.

The testimony of the plaintiff is to the effect that he was employed by the defendant July 4th to buy said mining claims for him; that this contract of employment was renewed, or that he was again employed by defendant to buy said claims for him on August 23rd, while the testimony of the defendant is to the effect that the plaintiff was employed by said mining company July 4th to buy said claims for said mining company; that no new agreement in relation to such serv-

ice was made between plaintiff and defendant on August 23rd.

It was for the jury to· say whether by the original agreement of July 4th, plaintiff was employed by the mining company to buy said claims for the company, or by defendant to buy said claims for himself; and if they found that he was originally employed by the mining company to buy said claims for the company, to say whether that agreement was canceled or set aside and a new agreement made August 23rd between plaintiff and defendant, by which defendant employed plaintiff to buy said claims for himself, and the evidence offered and excluded which tended to prove that plaintiff was employed July 4th by said mining company to buy said claims for said company, should have been admitted.

We think it was also error to admit the testimony of Messrs. Gilbert and Lee as to the usual and customary charges of lawyers for such services as plaintiff claimed to have rendered in this case. The services were rendered in Arizona. The witnesses are members of the Chicago bar, familiar with the charges usually made by Chicago lawyers for services in Chicago, but wholly ignorant of the usual charges of Arizona lawyers for services rendered in Arizona.

Under the evidence the court erred in giving, for the plaintiff, the following instruction:

"The court instructs the jury that if they find from a preponderance of evidence that the defendant, William J. Wilson, agreed to and did hire the plaintiff, Austin H. Hart, to foreclose certain mortgages, and to take other steps necessary for negotiating the purchase of mining claims, and that the said Hart performed such services, then the jury may assess as damages, if they find the plaintiff is entitled to recover, the usual, reasonable and customary charges for such services as are shown by the evidence. And if you further find from a like preponderance of the evidence that the defendant agreed with the plaintiff

that he would pay the plaintiff's necessary disbursement by him made in performing said services, then you should find, if you find from the evidence the plaintiff is entitled to recover from the defendant, what the reasonable and necessary expenses of the plaintiff were, and assess the same as a part of the damages against the defendant in this cause."

The testimony for the defendant tended to prove that there was an express agreement between plaintiff and defendant that plaintiff should foreclose the mortgage for $200, and that he was paid that sum in advance, and also that there was a special contract between plaintiff and the mining company that he should receive as his compensation for buying the mining claims the difference between $10,000 and the amount he paid for the claims. If the jury believed the testimony of defendant, plaintiff was not entitled to recover anything for his services in relation to the mortgages, and although they may have found that plaintiff was employed by defendant, personally, to buy said mining claims, still if they found that he agreed to buy said claims on a contingent fee, as defendant testified, he was not entitled to recover for his services in respect to said claims. But by the instruction the jury were told that if they found that the defendant hired the plaintiff to perform services in respect to either or both of said matters, he was entitled to recover the usual customary and reasonable charges therefor.

For the errors indicated the judgment of the Superior Court will be reversed and the cause remanded.

*Reversed and remanded.*